UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 03:17cv1562 (MPS) |
| | : | |
| RASHID MAHMOOD | : | |
| (a/k/a RASHID MEHMOOD), | : | |
| | : | |
| Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The United States (the "Government") brings this denaturalization action against Defendant Rashid Mahmood (also known as Rashid Mehmood) ("Defendant"), a naturalized U.S. citizen, under 8 U.S.C. § 1451(a). The complaint alleges that, "[t]hroughout his naturalization process Defendant misrepresented and concealed his use of multiple identities in immigration applications and the fact that he had previously applied for entry into the United States." Compl., ECF No. 1 at 1. Because the Defendant allegedly "procured his naturalization unlawfully," the Government brings an action according to 8 U.S.C. § 1451(a) to revoke and set aside the order admitting the Defendant to citizenship and to cancel his certificate of naturalization. The Government filed a motion for summary judgment on March 25, 2019. ECF No. 18. For the reasons set forth below, the motion is granted.

**I. BACKGROUND**

The Government filed its complaint in this case on September 19, 2017. ECF No. 1. On December 14, 2018, the Government filed proof of service on the Defendant in Islamabad, Pakistan on September 18, 2018, "via the Pakistan Central Authority." ECF No. 11 at 1; ECF

No. 11-1.[1] Under 8 U.S.C. § 1451(b), the Defendant was entitled to sixty days to respond to the complaint, so his deadline to respond was November 19, 2018. Defendant has not filed any response or appeared in this case, to date.

The Government moved for summary judgment on March 25, 2019. ECF No. 18. The Defendant has not filed any response. I assume familiarity with and incorporate into this ruling the Government's Local Rule 56(a)(1) Statement, ECF No. 18-2, which sets out the facts of this case and is corroborated by the documentary evidence submitted.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). In ruling on a summary judgment motion, "a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Generally, under Local Rule 7(a)(2), "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion." In addition, a defendant who fails

---

[1] Under Fed. R. Civ. P. 4(f)(1), an individual may be served outside the United States "by any internationally agreed means of service . . . such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Article 5 of the Hague Convention permits a State's authorized "Central Authority" to serve documents itself or arrange to have it served by an appropriate agency. *See* HCCH, "Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters," https://www.hcch.net/en/instruments/conventions/full-text/?cid=17. The Government filed a certification by the Pakistan Ministry of Law and Justice—Pakistan's designated Central Authority—that the summons and complaint were served on "Rashid Mehmood" in person on September 18, 2018, in conformity with Hague Convention. ECF No. 11-1 at 3; HCCH, "Pakistan – Central Authority & practical information," https://www.hcch.net/en/states/authorities/details3/?aid=288. Therefore, the Government validly served the Defendant.

to appear and is thereby defaulted admits all factual allegations made by the plaintiff. *City of New York v. Mikalis Pawn Shop*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint."). Because of the "grave consequences incident to denaturalization proceedings," however, the Supreme Court has held "that a burden rests on the Government to prove its charges in such cases by clear, unequivocal and convincing evidence which does not leave the issue in doubt . . . . even in cases where the defendant has made default in appearance." *Klapprott v. United States*, 335 U.S. 601, 612–13 (1949); *United States v. Sprogis*, 763 F.2d 115, 121 (2d Cir. 1985). In this case, even though the defendant has not responded to the motion for summary judgment or even appeared in the case, because of the grave impact of denaturalization, "a careful review of the evidence presented is warranted in order to best serve the interests of justice." *United States v. Gayle*, 996 F. Supp. 2d 42, 48 (D. Conn. 2014).

However, even in denaturalization cases, the facts of a case may be such that revocation of citizenship at the summary judgment stage is appropriate." *Gayle*, 996 F. Supp. 2d at 48; *United States v. Wasylyk*, 162 F. Supp. 2d 86, 89 (N.D.N.Y. 2001). If a district court finds that the Government has proved by clear, unequivocal and convincing evidence that a naturalized citizen's "citizenship was procured illegally or by willful misrepresentation of material facts," the court has no "discretion to refrain from entering a judgment of denaturalization." *Fedorenko v. United States*, 449 U.S. 490, 517 (1981).

### III. DISCUSSION

Under 8 U.S.C. § 1451(a), the United States may move to denaturalize a person "on the ground that such order [admitting the person to citizenship] and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful

3

misrepresentation." Naturalization requires "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship. Failure to comply with any of these conditions renders the certificate of citizenship 'illegally procured.'" *Fedorenko*, 449 U.S. at 506. To prove that a person procured naturalization by "concealment of a material fact or by willful misrepresentation," the Government must establish the following elements: "[1] the naturalized citizen must have misrepresented or concealed some fact, [2] the misrepresentation or concealment must have been willful, [3] the fact must have been material, and [4] the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Kungys v. United States*, 485 U.S. 759, 767 (1988). Here, the Government argues that "both grounds exist" to denaturalize the Defendant—that his naturalized citizenship was procured illegally and as a result of concealment of a material fact or willful misrepresentation. ECF No. 18-1 at 16. I agree that the Government has shown by clear, unequivocal and convincing evidence that the Defendant illegally procured his U.S. citizenship and made willful misrepresentations while doing so.

### A. "Rashid Mahmood" and "Rashid Mehmood"

Through documentary evidence and sworn affidavits, the Government has proved that "[t]he aliases Rashid Mahmood and Rashid Mehmood belong to one and the same person." ECF No. 18-1 at 7. Specifically, the Government has shown that the person who applied for entry into the United States at John F. Kennedy International Airport in New York, NY on July 9, 1992, *see* ECF No. 18-4 (INS memo to file regarding Rachid [sic] Mehmood); ECF No. 18-5 (Pakistani Passport for Rashid Mehmood); ECF No. 18-7 (Sworn Statement of Rashid Mehmood), is the same person who applied for permanent residence in October 1995, *see* ECF No. 18-13 (Application to Register Permanent Residence for Rashid Mahmood), applied again

4

for permanent residence in January 1997, *see* ECF No. 18-19 (Application to Register Permanent Residence for Rashid Mahmood), eventually applied for naturalization in November 2002, *see* ECF No. 18-24 (Application for Naturalization for Rashid Mahmood), and became a naturalized U.S. citizen in June 2005, *see* ECF No. 18-25 (Certificate of Naturalization for Rashid Mahmood).

First, the Government offers the report of a fingerprint examiner with the U.S. Department of Homeland Security comparing three sets of fingerprints: one made by "MAHMOOD, RASHID, DOB 4-3-73" in 2005, one made by "MEHMOOD, RACHID, DOB 3-14-73" in 1992, and one made by "RASHID MEHMOOD, DOB 3-14-73" on the same day in 1992. ECF No. 18-3 at 1. The report concludes, based on "a comparative analysis of the friction ridge detail for the fingerprint impressions in question" that all three sets "were made by the same individual." *Id.* Though the report is brief and though the Government does not provide evidence of the "Senior Fingerprint Specialist['s]" qualifications, there is no reason in the record to doubt the reliability of the report from Homeland Security's "ASCLD/LAB-International Accredited" laboratory.[2] ECF No. 18-3 at 2. This report, therefore, supports the Government's

---

[2] Though fingerprint evidence was historically routinely accepted by American courts, some scholars in recent years have criticized the reliability of fingerprint identification. *See United States v. Fell*, No. 5:01-cr-12, 2016 WL 11550797, at *3–5 (D. Vt. Sept. 13, 2016) (summarizing recent scholarship on fingerprint evidence). Despite this trend in the scholarship, "[t]he overwhelming majority of [court] decisions" find that fingerprint evidence satisfies *Daubert* standards. *Id.* at *5; *see, e.g.*, *id.* at *6 (collecting cases); *United States v. Stevens*, 219 F. App'x 108, 109 (2d Cir. 2007) (summary order finding that district court did not abuse discretion by refusing to conduct a *Daubert* hearing on the reliability of fingerprint evidence); *United States v. Salim*, 189 F. Supp. 2d 93, 101 (S.D.N.Y. 2002) (denying motion to preclude testimony from an FBI fingerprint expert); *United States v. Mitchell*, 365 F.3d 215, 246 (3d Cir. 2004) ("[I]n light of the basic *Daubert* principles, . . . most factors support (or at least do not disfavor) admitting the government's latent fingerprint identification evidence.").

In *Mitchell*, the Third Circuit admitted "latent fingerprint identification evidence"— fragments of fingerprints left behind and "often not visible to the naked eye until dusted or otherwise revealed"—even though latent prints are more subject to distortion "because they are smaller, and left more carelessly than full-rolled prints," which are "familiar to anyone who has

contention that the "Rashid Mehmood" who entered the United States in 1992 is the same person as the "Rashid Mahmood" who eventually applied for and received naturalized citizenship in 2005.

Second, the evidence shows that when the Defendant applied for permanent residence in 1995 and 1997, using the name "Rashid Mahmood" each time, ECF No. 18-13 at 2 (1995 Application), ECF No. 18-19 at 2 (1997 Application), he submitted a translated Pakistani birth register showing the name "Mehmood," *see* ECF No. 18-16 at 2 (Birth Register submitted in 1995); ECF No. 18-22 at 2 (Birth Register submitted in 1997). In his December 19, 1995 interview with an INS immigration examiner, the Defendant confirmed that he used the name "Mahmood." *See* ECF No. 18-13 at 2 (1995 Application showing red check mark next to name "Rashid Mahmood"); ECF No. 18-17 ¶ 8 (Declaration of USCIS Section Chief explaining that red ink indicates that the INS officer "asked the question and the applicant answered the question consistent with the answer on the application").

Third, the Government submitted evidence showing that the signature used by "Rashid Mehmood" in 1992 matched the signatures used by "Rashid Mahmood" in his 1995 and 1997 applications for permanent residence. *Compare* ECF No. 18-5 at 4 (signature of "Rashid Mehmood" on Pakistani passport); ECF No. 18-7 at 4 (signature of "Rashid Mehmood" on 1992 sworn statement) *with* ECF No. 18-13 at 5 (signature of "Rashid Mahmood" on 1995 application

---

been fingerprinted for identification or law enforcement reasons," and even though latent prints "are left on surfaces that many other fingers have also touched." 365 F.3d at 221. This case does not involve latent fingerprints. Here, the Government offers evidence of a Homeland Security Senior Fingerprint Specialist's comparison of the Defendant's full-rolled prints, taken for identification purposes. *See* ECF No. 18-3 at 3 (displaying images for "Finger Number[s]" 1 and 2 in 2005); *id.* at 5 (displaying images for all five fingers in 1992). Therefore, I find that the fingerprint comparison in this case is sufficiently reliable evidence that, along with the Government's other evidence, shows that "Rashid Mahmood" and "Rashid Mehmood" are the same person.

for permanent residence); ECF No. 18-14 at 2 (signature of "Rashid Mahmood" on 1995 application for waiver of ground of excludability); ECF No. 18-15 at 2 (signature of "Rashid Mahmood" on 1995 Form G-325A) *and* ECF No. 18-19 at 5 (signature of "Rashid Mahmood" on 1997 application for permanent residence); ECF No. 18-20 at 2 (signature of "Rashid Mahmood" on 1997 application for waiver of ground of excludability); ECF No. 18-21 at 2 (signature of "Rashid Mahmood" on 1997 Form G-325A). On all eight documents, the signature depicts only the first name, "Rashid," and the letter "d" loops into an underline of the word. The signature is sufficiently distinctive to support the Government's assertion that the same man signed all eight documents.

Finally, the evidence submitted by the Government includes a photograph of "Rashid Mehmood" on a temporary resident card issued in 1989, ECF No. 18-5 at 3, two photographs of "Rashid Mehmood" with the Pakistani passport used upon application for entry to the United States in 1992, ECF No. 18-5 at 4, 21, and a photograph of "Rashid Mahmood" on his Certificate of Naturalization, issued in 2005. ECF No. 18-25 at 2. The photographs provide weak corroborating evidence that "Mehmood" and "Mahmood" are the same person, particularly since the eyebrows and eyes look similar across the four photos. But the photograph of "Mahmood" was taken over ten years later than the photographs of "Mehmood," and the angles and facial hair vary across the photographs, so it is difficult to determine resemblance clearly. While the photographs alone would not support a finding that "Mehmood" and "Mahmood" are the same person, they do provide a small amount of corroboration of the identity shown by the Government's other evidence.

Taken as a whole, the record submitted by the Government provides clear, unequivocal, and convincing evidence that the aliases "Rashid Mehmood" and "Rashid Mahmood" belong to the same man.

**B. Misrepresentations**

Given that finding, the Government has also shown by clear, unequivocal, and convincing evidence that the Defendant procured his U.S. citizenship and Certificate of Naturalization illegally, by concealment of material facts, and by willful misrepresentations. When the Defendant attempted to enter the United States on July 9, 1992, he used the name "Rashid Mehmood," and presented his date of birth as March 14, 1973. ECF No. 18-5 (Pakistani passport of "Rashid Mehmood"); ECF No. 18-7 (sworn statement of "Rashid Mehmood" on July 9, 1992). He presented a Temporary Resident Card, ECF No. 18-5 at 3, that used the Alien Registration Number of a female Liberian citizen who was not the Defendant, ECF No. 18-6 at 2. An immigration judge ordered him to be excluded from the United States in October 1992, on the charges that he willfully misrepresented a material fact and that he was not in possession of a valid, unexpired visa. *See* ECF No. 18-8 at 2 (INS Notice to Applicant "Rashid Mehmood" that he was not entitled to enter the United States); ECF No. 18-10 (Decision of the Immigration Judge, ordering exclusion on October 13, 1992). INS ordered the Defendant to appear on January 18, 1994 for deportation from the United States to Pakistan, but the Defendant failed to appear. ECF No. 18-11.

Despite this history, the Defendant applied to register as a permanent resident in 1995 under a different name, "Rashid Mahmood," and made repeated misrepresentations regarding his prior attempt to enter the United States in July 1992 and his prior use of the name "Rashid

Mehmood." On his 1995 application, he made at least the following misrepresentations under penalty of perjury:

   a. His date of last arrival was May 1992, ECF No. 18-13 at 2;

   b. He never had been "deported from the U.S., or removed form the U.S. at government expense, excluded within the past year, [nor was he then] in exclusion or deportation proceedings", *id.* at 4; and

   c. He had not "by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit," *id.* at 4.

During his interview with an INS immigration examiner on December 19, 1995, the Defendant changed his answer to indicate that he *had* procured an immigration benefit by fraud or willful misrepresentation. *Id.* at 4; ECF No. 18-17 ¶ 8. On his 1995 application for a waiver of ground of excludability, he falsely stated that he had been in the United States in "New Britain/Hartford," CT since May 1992. ECF No. 18-14 at 2. On his 1995 Form G-325A, he falsely stated that he had never used any other names. ECF No. 18-15 at 2. INS denied his application for permanent residence on September 12, 1996 because his application was "deemed abandoned." ECF No. 18-18 at 3.

On January 27, 1997, the Defendant filed another application for permanent residence using the name "Rashid Mahmood." ECF No. 18-19. He made the same misrepresentations, under penalty of perjury, regarding his arrival date and his immigration history on this application as he had on his 1995 application. *Id.* at 2–3. He submitted another application for a waiver of ground of excludability that misstated his immigration history, ECF No. 18-20 at 2, and another Form G-325A that falsely stated he had never used any other names, ECF No. 18-21 at 2. During an interview on July 8, 1997, the Defendant confirmed the information contained in his application. ECF No. 18-19; ECF No. 18-17 ¶ 8.

9

Based on the information supplied in these 1997 application materials and during his July 8, 1997 interview, the INS granted the Defendant the status of lawful permanent resident. ECF No. 18-17 ¶¶ 22. In her Declaration, USCIS Section Chief Amanda Dyer states, "[i]f Defendant disclosed his prior immigration history, his use of a different identity to gain admission to the United States, his use of fraudulent identity documents when attempting to enter the United States, his citation by an INS officer when he attempted to enter the United States, and his ordered deportation and exclusion, the INS officer adjudicating either his 1995 Form I-485 or 1997 Form I-485 would have conducted further inquiry to determine his eligibility" for permanent residence, and "[f]urther inquiry . . . would have caused INS to deny his Form I-485 because he would not have been eligible for the immigration benefit he sought." *Id.* ¶ 23.

In his 2002 naturalization application, the Defendant once again made the same misrepresentations. He stated, under penalty of perjury, that he had never used any other names, ECF No. 18-24 at 2; that he had never "given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal," *id.* at 9; that he had never "lied to any U.S. government official to gain entry or admission into the United States," *id.*; and that he had never been "ordered to be removed, excluded, or deported from the United States," *id.* at 10. The Defendant confirmed this information under oath at his August 2003 naturalization interview. ECF No. 18-24; ECF No. 18-17 ¶¶ 25–26. Based on the information supplied by the Defendant in his naturalization application and interview, USCIS approved the Defendant's application on April 18, 2005. ECF No. 18-17 ¶ 27. The Defendant became a naturalized citizen and received a Certificate of Naturalization on June 3, 2005. ECF No. 18-25.

### C. Illegal Procurement

This evidence shows that the Defendant was not eligible for permanent residence because "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible," 8 U.S.C. § 1182(a)(6)(C)(i), and "aliens who are inadmissible . . . are ineligible to receive visas and ineligible to be admitted to the United States," § 1182(a). The misrepresentations detailed above and in the Government's summary judgment papers were willful because the Defendant must have known that he had previously attempted to enter the United States in 1992 under the name "Rashid Mehmood" using a fraudulent temporary resident card with an alien number belonging to someone else. And the misrepresentations were material, according to Dyer's declaration, ECF No. 18-17 ¶¶ 22–23, 27, and based on the statutory requirements for permanent residence. *E.g.*, 8 U.S.C. § 1182(a)(6)(B) ("Any alien who without reasonable cause fails or refuses to attend or remain in attendance at a proceeding to determine the alien's inadmissibility or deportability and who seeks admission to the United States within 5 years of such alien's subsequent departure or removal is inadmissible."). Because he was inadmissible at the time of his 1997 application, he was never "lawfully admitted" as a permanent resident.

Because he was not "lawfully admitted" to permanent residence, he did not meet the requirements for naturalization under 8 U.S.C. §§ 1427(a) and 1429. And because naturalization requires "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship[, f]ailure to comply with any of these conditions renders the certificate of citizenship 'illegally procured.'" *Fedorenko*, 449 U.S. at 506. Therefore, the Government has

shown by clear, unequivocal, and convincing evidence that the Defendant's naturalized citizenship was illegally procured.

### D. Willful Misrepresentation and Concealment of Material Facts

The Government has also shown that the Defendant's naturalization must be revoked on the basis of willful misrepresentations, because it has shown "[1] the naturalized citizen . . . misrepresented or concealed some fact, [2] the misrepresentation or concealment [was] willful, [3] the fact [was] material, and [4] the naturalized citizen . . . procured citizenship as a result of the misrepresentation or concealment." *Kungys*, 485 U.S. at 767. As stated above, the Defendant made numerous, willful misrepresentations of material fact that caused INS and USCIS to approve his applications for permanent residence and for naturalization, respectively.

## IV. CONCLUSION

For all these reasons, the Government has provided clear, unequivocal, and convincing evidence that the Defendant procured his citizenship illegally and by willful misrepresentation and concealment of material facts. Therefore, the motion for summary judgment is granted, and I must enter judgment revoking the Defendant's naturalization and canceling his certificate of naturalization. *Fedorenko*, 449 U.S. at 517.

The Clerk shall enter judgment revoking and setting aside the order admitting the Defendant to citizenship and canceling his Certificate of Naturalization (No. 29011409). The Defendant is enjoined from claiming any rights or privileges under any document suggesting U.S. citizenship obtained as a result of his June 3, 2005 naturalization. Within 10 days of the entry of Judgment, the Defendant shall surrender his Certificate of Naturalization, along with any copies in his possession or control, and any other indicia of U.S. citizenship, including any U.S. passport, to the U.S. Department of Justice, Office of Immigration Litigation, P.O. Box 868, Ben

Franklin Station, Washington, D.C. 20044. The Clerk shall send a certified copy of this order to the Attorney General of the United States. 8 U.S.C. § 1451(f).

    IT IS SO ORDERED.

                                                /s/
                                      Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
          February 3, 2020